UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTOMATION & MODULAR
COMPONENTS, INC.,

    Plaintiff,

v.

CHRISTOPHER BLACKFORD and
TEKNO, INC.,

    Defendants.

Case No. 23-cv-12420

Honorable Linda V. Parker

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This matter is before the Court on the motion for a preliminary injunction (ECF No. 4) brought by Plaintiff Automation & Modular Components, Inc. ("AMC") against Defendants Christopher Blackford ("Blackford") and Tekno, Inc. ("Tekno"). This action arises out of Blackford's alleged violation of an employment agreement with AMC, his former employer. For the reasons that follow, the Court is denying Plaintiff's motion.

Plaintiff filed its Complaint on September 7, 2023, in the Oakland County Circuit Court. On September 22, 2023, Defendants removed the matter to this Court. Plaintiff's Complaint alleges: (I) breach of contract against Blackford; (II) tortious

interference with contract against Tekno; and (III) tortious interference with business relationship or expectations against all Defendants.[1]

Plaintiff seeks a preliminary injunction enjoining Defendants from violating their non-compete and non-solicitation agreements and extending the agreements until at least March 1, 2024 and March 1, 2025, respectively. Plaintiff further seeks an order enjoining Tekno from directly or indirectly utilizing Blackford or any of AMC's confidential information to compete with AMC and/or solicit AMC's customers. The Court held a hearing with respect to Plaintiff's motion on November 2, 2023.

## I. Factual and Procedural Background

AMC and Tekno are competitors in the conveyor and assembly automation industry. AMC is a Michigan based corporation with its headquarters in Davisburg, Michigan. Tekno is a Kentucky based corporation with its headquarters in Cave City, Kentucky. Blackford was employed as the Regional Sales Manager of AMC from May 2, 2016, until his resignation on December 2, 2022. Prior to the start of his employment with AMC, Blackford signed an employment agreement ("the

---

[1] Plaintiff's Complaint also includes a fourth count for preliminary injunctive relief. (*See* ECF No. 1-2 at PageID. 19.) A preliminary injunction is a remedy not a substantive cause of action. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008) (noting that "[a] preliminary injunction is an extraordinary remedy," awardable only upon proof of likelihood of success on the merits of a substantive claim).

2

Agreement") containing three relevant provisions: (1) the non-compete provision; (2) the non-solicit provision; and (3) the confidentiality provision.

Six months after his resignation, Blackford informed AMC that he accepted employment as the Vice President of Sales and Marketing at Tekno.[2] Shortly thereafter, AMC demanded that Blackford terminate his position at Tekno, citing the provisions of the Agreement and the possibility of breach thereof; a demand Blackford refused. (*See* ECF No. 4-2 at PageID 123-24; *see also* ECF No. 10-5 at PageID. 241.)

In August 2023, about two months after starting at Tekno, Blackford attended a charity golf outing hosted by Magna Seating, a customer of both AMC and Tekno. Blackford attended wearing Tekno corporate attire and socialized with those in attendance but did not play golf. AMC argues that Blackford's attendance at the golf outing is a violation of his non-solicitation agreement. AMC further argues that Blackford's continued employment at Tekno is in violation of the provisions of the Agreement, as he is directly or indirectly competing with, and soliciting business

---

[2] In the six-month period between Blackford's resignation from AMC and his employment at Tekno, Blackford briefly held the position of Vice President of Sales for North America for Shuttleworth, LLC, another company in the conveyor and assembly automation industry who is not a party to this action. (*See* ECF No. 10-2 at PageID. 223; *see also id.* at PageID 230-31.) Blackford maintains that he informed AMC about his position at Shuttleworth, LLC and AMC did not take any action against him. (*See* ECF No. 10-2 at PageID. 231.) AMC argues that Shuttleworth, LLC is not a competitor to AMC. (*See* ECF No. 13 at PageID. 474.)

3

from, AMC and, on information and belief, disclosure of AMC's confidential information is inevitable.

## II. Applicable Standard

When a party moves for a preliminary injunction, the district court considers four factors to determine whether to grant relief: (1) the likelihood of success on the merits of the action; (2) the irreparable harm which could result without the requested relief; (3) the possibility of substantial harm to others; and (4) the impact on the public interest. *See Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2008).

"[T]he preliminary injunction is an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.'" *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). The party moving for the injunction has the burden to show that the circumstances clearly demand it. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III. Applicable Law and Analysis

### A. Plaintiff's Likelihood of Success on the Merits

Failure to establish likelihood of success on the merits "is usually fatal to a plaintiff's quest for a preliminary injunction." *Enchant Christmas Light Maze &*

*Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (internal quotation omitted).  To state a claim for breach of contract, a plaintiff must first establish the elements of a valid contract.  *See Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453 N.W.2d 304, 307 (1990).  The elements of a valid contract in Michigan are: (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *See Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58, 60 (1991).

Under Michigan law, the elements of a breach of contract claim are: (1) a contract existed between the parties; (2) the terms of the contract required performance of certain actions; (3) a party breached the contract; and (4) the breach caused the other party injury.  *See Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 815, 818 (E.D. Mich. 2007).  The parties do not dispute that a contract existed; they dispute the enforceability of the provisions of the Agreement. (*See* ECF No. 11 at PageID. 353-59.)

<u>Breach of Contract – Non-Compete Provision</u>

Defendants do not dispute that Blackford is employed by Tekno, which would constitute breach of a valid non-compete agreement.  "The burden of demonstrating the validity of the [non-compete] agreement is on the party seeking enforcement." *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 677 (E.D. Mich. 2015) (alteration added) (citing *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 507, 741 N.W.2d.

539 (2007)). An agreement not to compete is enforceable if it: (1) protects the employer's reasonable competitive business interests; and (2) is reasonable in duration, geographical scope, and type of employment or line of business. *See id.* (citing *St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 266, 715 N.W.2d. 914 (2006)).

The employer's reasonable competitive business interests include preventing the anticompetitive use of confidential information, close contact with the employer's customers or customer lists, or cost factors and pricing. *See Atarsia*, 147 F. Supp. 3d at 677 (internal citations and quotations omitted). The non-compete provision of the Agreement reads as follows:

> During the term of employment and for a period of one (1) year following the Term of Employment by Employee or the Company for any reason, Employee shall not directly or indirectly (whether as an employee, sole proprietor, partner, venturer, stockholder, director, officer, consultant, agent or in any other capacity) engage or participate in conveyors or assembly automation products or systems and related products, or other activity which is otherwise competitive with the Company, anywhere within the geographic area where the Company does business.

(*See* ECF No. 11-3 at PageID. 377.)

Here, the non-compete provision proscribes a period of one-year. With respect to duration of a non-compete provision, "Michigan Courts have not provided any bright line rules." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (E.D. Mich. 2007). Courts have routinely upheld non-

6

compete agreements restricting a former employee from engaging in restricted activities for a period of six months to three years. *See, e.g., Bristol Window & Door, Inc. v. Hoogenstyn*, 250 Mich. App. 478, 650 N.W.2d 670 (2002) (enforcing a three-year, statewide non-competition agreement); *Lowry Comput. Prods., Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (enforcing a one-year prohibition); *Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) (upholding a six-month time period). Given that the duration is limited to only one year, the duration of the non-compete provision is likely reasonable.

With respect to the geographic terms of a non-compete provision, it appears that AMC has business interests throughout the world. According to Exhibit A of AMC's Complaint, AMC has "helped companies in over 25 industries across six continents." (ECF No. 4-2 at PageID. 105; *see also* ECF No. 14 at PageID. 524 ("AMC's customers span across the United States, Mexico, Argentina, Brazil, Canada, China, England, Germany, Hungary, India, Italy, Malaysia, Poland, Scotland and Sweden.").) [3]

---

[3] Section 1 of the Agreement provides that the "geographic territory covered by this agreement is defined as follows": KY, TN, NC, SC, GA, FL, AL, MS, MO, AR, LA, TX, OK and the Country of Mexico. The Agreement also identifies seven (7) "key accounts" in the State of Ohio, as well as the possibility of other "key accounts" in the "Southern Region."

"The standard for reasonableness of geographic limitations in restrictive covenants is whether they are no greater than reasonably necessary to protect an employer's legitimate business interests." *Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 923 (E.D. Mich. 2008) (alteration added). Agreements that do not specify any geographic limitation can be reasonable "if the employer actually has legitimate business interests throughout the world." *Walling*, 851 F. Supp. at 847 (citing *Sigma Chem. Co. v. Harris*, 586 F. Supp. 704, 710 (E.D. Mo. 1984)). The geographic limitation of this agreement is likely reasonable given AMC's legitimate business interests throughout the world.

Lastly, with respect to the type of employment, the agreement is narrowly tailored to limit Blackford's employment from companies that are involved "in conveyors or assembly automation products or systems and related products, or other activity which is otherwise competitive with the [AMC]." (ECF No. 11-3 at PageID. 377.) This provision appears reasonable and not overbroad as it prohibits the Defendant from joining a direct competitor with AMC. *Cf. Atarsia,* 147 F. Supp. 3d at 679 (finding a non-compete agreement that precluded a former employee from joining a "direct or indirect" competitor, anywhere in the world, in any capacity, to be overbroad); *New World Sys. Corp. v. Jones*, No. 06-11603, 2009 WL 996954, at *12 (E.D.Mich. Apr. 14, 2009) (determining that a limitation that prohibited a former employee from working for a direct or indirect competitor in any capacity

8

was too broad to be enforceable). This limitation of the non-compete provision appears reasonable.

As a result, the non-compete provision, as a whole, is likely reasonable. As previously mentioned, Defendants do not dispute Blackford's employment by Tekno. Thus, AMC has a likelihood of success on the merits of its breach of contract claim as it relates to the non-compete provision.

Breach of Contract – Non-Solicitation Provision

"Like non[-]compete clauses, non-solicitation clauses are enforceable to the extent that they are reasonable." *Gene Codes Corp. v. Thomson*, No. 09-14687, 2011 WL 611957, at *10 (E.D. Mich. Feb. 11, 2011) (alterations added). Here, the non-solicitation provision reads as follows:

> During the Term of Employment and for a period of two (2) years following the Term of Employment by Employee or the Company for any reasons, Employee shall not directly or indirectly (whether as an employee, sole proprietor, partner, venturer, stockholder, director, officer, consultant, agent or in any other capacity:
> (i) Solicit or provide competitive products or services to any of the Company's past, present or prospective customers or clients, or in any way influence any such person to terminate or alter its business relationship with the Company.
> (ii) Solicit, hire or contract with any person engaged as an employee or agent of the Company, or in any way influence any such person, to terminate his/her relationship with the Company.

(ECF No. 11-3 at PageID. 377.)

For the reasons stated above, the non-solicitation provision appears reasonable as it is limited in scope and duration. However, AMC has not alleged

9

facts sufficient to find that Defendants have violated this provision. Blackford's mere presence at a charitable event, hosted by a customer of both parties, with nothing more, is insufficient to find that Defendants have violated the non-solicitation agreement. Consequently, Plaintiff does not have a likelihood of success on its breach of contract claim with respect to the non-solicitation provision.

Breach of Contract – Confidentiality Provision

The confidentiality provision of the Agreement provides, in relevant part:

> "Confidential Information" includes, but is not limited to, information which would qualify as a Trade Secret. Confidential Information shall not include information that is in the public domain or was known to Employee prior to employment with the Company. Employee acknowledges and agrees that all Confidential Information is the exclusive and confidential property of the Company or its customers. Employee shall not use or disclose any Confidential Information during employment with the Company, expect as approved by the Company and as necessary to Employee's duties for the benefit of the Company. Employee shall not use for any purpose or disclose to any person or entity any Confidential Information at any time after the Term of Employment without the advance, written consent of the Company, except as may be ordered by a court of law.

(*Id.* at PageID. 378.) Plaintiff argues that Defendants disclosure of Plaintiff's confidential information is inevitable. (*See* ECF No. 4 at PageID. 81.) Plaintiff relies on the doctrine of "inevitable disclosure." "The doctrine of inevitable disclosure is, in short, the theory that a former employee will inevitably disclose general, allegedly confidential information." *Dura Global Techs. Inc. v. Magna Donnelly, Corp.*, No. 07-10945, 2007 WL 4303294, at *4 (E.D. Mich. Dec. 6, 2007)

(citing *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848, 856 (W.D. Mich. 2007)).

Michigan has not endorsed the "inevitable disclosure" doctrine. *See Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535 (6th Cir. 2008); *see also CMI Int'l v. Intermet Int'l Corp.*, 251 Mich. App. 125, 134, 649 N.W.2d 808 (2002) (alteration added) (citing *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995)) ("[F]or a party to make a claim of threatened misappropriation, whether under a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets.").

Plaintiff has failed to identify any specific confidential information that has been disclosed by Blackford in the course of his employment with Tekno. Therefore, Plaintiff does not have a likelihood of success on the merits of its breach of contract claim with respect to the confidentiality provision.

Tortious Interference with Contract

The elements of a tortious interference with a contractual relationship claim under Michigan law are: (1) a contract; (2) a breach; and (3) instigation of the breach without justification by the defendant. *See Oak Street Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 577 (E.D. Mich. 2010) (citing *Wood v. Herndon & Herndon Investigations, Inc.*, 189 Mich. App. 495, 499, 465 N.W.2d 5 (1990)). The Court

has already held, with respect to the non-compete provision, that there was both a contract between AMC and Blackford and a breach thereof by Blackford. *See supra*.

The Sixth Circuit has emphasized that "to show instigation[,] a plaintiff must typically produce some evidence of a defendant's 'active solicitation' of a plaintiff's employee." *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 659 (6th Cir. 2002) (alteration added). AMC does not allege facts that suggest Tekno instigated Blackford's departure from AMC to Tekno. In fact, Blackford went to another company before being hired by Tenko. AMC, therefore, does not have a likelihood of success of its tortious interference of a contractual relationship claim.

### B. Irreparable Harm

Similar to a finding of likelihood of success on the merits, a finding of irreparable harm is "indispensable" and "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original) (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982)); *see also Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023) (alteration added) (quotation omitted) ("These four components [for a preliminary injunction] are often described as factors to be balanced. But the irreparable harm requirement is indispensable."). With respect to Plaintiff's breach of contract claim,

particularly the non-compete provision, Plaintiff has failed to show that it will suffer an irreparable injury absent a preliminary injunction.

Irreparable injury is defined as "[a]n injury that cannot be adequately measured or compensated by money." *Cellnet Comm'ns, Inc. v. New Par*, 291 F. Supp. 2d 565, 569 (E.D. Mich. 2003) (quoting *Black's Law Dictionary* 789-90 (7th ed. 1999)). The Supreme Court has stated that:

> [t]he key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (alteration in original) (emphasis added) (quoting *Va. Petrol. Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.D.C 1958)).

AMC relies on *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372 (6th Cir. 2023) for support of their motion for a preliminary injunction. There, the Sixth Circuit affirmed the District Court's issuance of a preliminary injunction based on the breach of a non-compete agreement. The *Stryker* Court found that the defendant was deeply familiar with the plaintiffs' business strategies, was a key player in closing multi-million dollar deals and was involved from a customer-facing perspective in leading proposal reviews. (Hr'g Tr. ECF No. 17 at PageID. 349, *Stryker Emp. Co., LLC v. Abbas*, 22-cv-531, (W.D. Mich.)). As a result, the *Stryker*

13

Court found merit in the plaintiffs' argument that "[d]efendant's breach of the non-[compete] agreement is not compensable by money damages but causes irreparable harm in light of [d]efendant's intricate knowledge and customer relationships." *Id.*

AMC, similarly, argues that Blackford's violation of the non-compete causes injury that cannot be compensated by money damages. AMC fails to offer any evidence to support its conclusion that it has suffered any injuries in the first instance. Nor has it brought forth evidence to show that such injuries cannot be adequately compensated by money damages. Failure to do so precludes this Court from finding that AMC will suffer irreparable harm if the preliminary injunction is not issued.

AMC further argues that it will suffer irreparable harm due to the damage to its good will. (*See* ECF No. 4 at PageID. 85-86.) "A loss of customer goodwill often amounts to irreparable injury." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, AMC fails to adequately support its claims of loss of customer goodwill, relying on a tenuous possibility of harm in the form of losing customers to Defendants. *See Fischer*, 78 F.4th at 868 (alteration added) (citing *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) ("[C]andidates must show harm that is likely, not remediable at final judgment, and immediate."). Moreover, with respect to breach of contract actions, this Court has held that:

14

> while the Court has the discretion to permit injunctive relief for breach of contract, the classic remedy for breach of contract is an action at law for damages. If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists and no irreparable harm may be found as a matter of law. The mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy.

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.* 966 F. Supp. 540, 541 (E.D. Mich. 1997) (alterations and quotations omitted). Plaintiff has failed to establish that it will suffer irreparable harm absent the injunction as the damages it complains of are monetary. "[E]ven the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *D.T.*, 942 F.3d at 326-27 (quotations omitted).

AMC has only established a likelihood of success on one of its three provisions of its breach of contract claim: the non-compete provision. Despite this, AMC has failed to establish irreparable harm on this claim; an indispensable factor for the Court to issue a preliminary injunction. Therefore, AMC's motion for a preliminary injunction is denied. The Court will, nevertheless, examine the remaining factors.

### C. Substantial Harm to Others

An inquiry into whether there will be substantial harm to others is a fact-based inquiry. *See Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 426 (6th Cir. 2006). Plaintiff argues that Defendants will not be harmed if the Court enjoins Blackford from breaching the non-compete, as Blackford is not being deprived of an

15

opportunity to earn a living and Tekno is free to conduct its business without utilizing Blackford in violation of his non-compete. (*See* ECF No. 4 at PageID. 87.) It further argues that no third parties will be harmed by this injunction. (*See id.*)

The Court finds that there would be no substantial harm to others if the Court entered a preliminary injunction. Any harm that would be brought on by the issuance of the preliminary injunction would be minimal as Blackford could still be gainfully employed as he was before joining Tekno. Further, any injunction to be issued would be narrowly tailored to only impact Blackford. As a result, "the court's decision will not have an impact on anyone besides the parties to this litigation." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 610 (E.D. Mich. 2015) (citing *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002)). This weighs in favor of issuing the preliminary injunction.

### D. The Impact on The Public Interest

Lastly, the public interest would be served by the entry of a preliminary injunction. The public has an interest in fair competition. The public also has an interest in the enforcement of legislatively enacted laws. *See Kelly Servs., Inc. v. Noretto*, 496 F. Supp. 2d 645, 660-61 (E.D. Mich. 2007). As a result, this factor weighs in favor of granting the preliminary injunction.

### V.   Conclusion

For the reasons set forth above, the Court concludes that the relevant considerations weigh against the entering the requested preliminary injunction.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 4) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 3, 2023